BISHOP *v.* LAMBERT.

1. MUNICIPAL CORPORATIONS—CITIES OF FOURTH CLASS—LAW OF 1895—IMPOSITION OF TAXES—POWER OF COMMON COUNCIL.

The action of the common council of a city of the fourth class, incorporated under Act No. 215, Pub. Acts 1895, in adopting, by a bare majority vote, a motion providing for the employment of firemen at a specified salary per month, is invalid, unless the necessary funds are already provided, under section 7 of chapter 8, requiring the concurrence of two-thirds of the aldermen elect to impose a tax.

2. SAME—APPROPRIATION OF EXISTING FUNDS — PRESUMPTION OF REGULARITY.

It will be presumed, however, in the absence of a contrary showing, that the council had provided a fire-department fund, as it is authorized to do by section 3 of chapter 30 of the organic act, and that the expenditure was designed to be made from moneys already raised by taxation and apportioned to such fund.

3. SAME—APPROPRIATION OF MONEY—WHAT CONSTITUTES.

The employment of firemen by a city council, at a specified monthly salary, constitutes an appropriation of money, within the meaning of a charter provision that such action can only be taken by a majority vote of the aldermen elect.

4. SAME—PROCEEDINGS OF COUNCIL—VALIDITY.

A charter provision that no resolution appropriating money shall be adopted by the council except by a specified vote cannot be evaded by embracing such action in the form of a motion.

5. SAME—FORM OF ACTION.

But *it seems* that action by a council is not void merely because it was taken by motion, instead of by resolution, as provided by the charter.

6. SAME—MAJORITY VOTE—CASTING VOTE OF MAYOR.

Under section 7 of chapter 8 of Act No. 215, Pub. Acts 1895, providing that no money shall be appropriated by cities incorporated thereunder except by ordinance or resolution of the council, and that no resolution shall be passed or adopted "except by the vote of a majority of all the aldermen elected

to office, except as herein otherwise provided," and section 2, giving the mayor the casting vote in case of a tie, the mayor may vote, in case of a tie, upon a resolution appropriating money.

*Certiorari* to Wayne; Carpenter, J. Submitted July 6, 1897. Decided July 22, 1897.

*Mandamus* by William W. Bishop and others, aldermen of the city of Wyandotte, to compel Walter C. Lambert, mayor of said city and *ex officio* president of the common council, to rescind his ruling in declaring a certain motion carried. From an order denying the writ, relators bring *certiorari*. Affirmed.

The relators are aldermen, and the respondent is mayor, of Wyandotte, which is a city of the fourth class. The return shows that on May 3, 1897, all of the six aldermen and the respondent were present at a meeting of the common council, when it was moved "that we proceed to elect three firemen, for one month." Upon this motion three of the aldermen voted "Yea," and three "Nay." Thereupon the mayor voted "Yea," and declared the motion carried. By similar votes, three persons were then elected, separately, as firemen for one month, each to receive a salary of $40 a month. The relators appealed to the circuit court for an order requiring the respondent to rescind his action in declaring said motion carried and said persons elected. The circuit court denied the writ, and the case is here upon *certiorari*.

*Charles W. Casgrain*, for relators.

*Conely & Taylor*, for respondent.

HOOKER, J. (*after stating the facts*). The principal questions in the case are:

1. Was a vote of two-thirds of the aldermen necessary to the employment of these firemen?

2. If not, was a vote of a majority of the aldermen elect, exclusive of the mayor, essential to such employment?

This action is shown to have been taken with a view to the performance of police duty by these firemen, in addition to their duties as firemen, as a measure of economy. The contention that an affirmative vote by two-thirds of the aldermen elect was necessary is based upon section 7, chap. 8, Act No. 215, Pub. Acts 1895, which provides:

"All meetings and sessions of the council shall be public. A majority of the aldermen shall make a quorum for the transaction of business; a less number may adjourn from time to time, and all pending business and business noticed or set down for hearing at such meeting shall be taken up and heard at such adjourned meeting without further notice, and the members present may compel the attendance of absent members in such manner as shall be prescribed by rules or ordinance. But no office shall be created or abolished, nor any tax or assessment be imposed, street, alley, or public ground be vacated, real estate or any interest therein purchased, leased, sold, or disposed of, or private property be taken for public use, unless by a concurring yea and nay vote of two-thirds of all the aldermen elect; nor shall any vote of the council be reconsidered or rescinded at a special meeting, unless there be present as many aldermen as were present when such vote was taken. No money shall be appropriated except by ordinance or resolution of the council; nor shall any resolution be passed or adopted except by the vote of a majority of all the aldermen elected to office, except as herein otherwise provided."

In this connection, sections 1 and 2 may become important, and are therefore quoted:

"The legislative authority of cities incorporated under this act shall be vested in a council consisting of the mayor, two aldermen elected from each ward, and the city clerk.

"The mayor shall be president of the council, and preside at the meetings thereof, but shall have no vote therein, except in case of a tie, when he shall have the casting vote."

It is said that the employment by the council of three firemen, at a salary of $40 each, is substantially the imposition of a tax, and therefore requires the concurrence

of two-thirds of the aldermen elect, and that, at all events, it was an appropriation of money, and should have been by resolution or ordinance, and that the mayor's vote could not be counted in making the necessary majority.

In the case of *Tennant* v. *Crocker*, 85 Mich. 337, it was held that a resolution authorizing the purchase of land for streets by a committee was the creation of an obligation which, not having been provided for in the annual appropriation bill, could only be discharged through taxation, and that all contracts incurring liability for the payment of money constitute the basis for which taxes may be levied, and are in effect an appropriation of so much money to be raised by tax for that purpose.    It was said, further, that—

"It is just as essential that every resolution or ordinance incurring a liability which must be met by taxation should be passed by a two-thirds vote of all the aldermen elect as it is that the appropriation bill should be passed by such vote."

Under this decision, there seems no way to avoid the conclusion that the contract to pay these firemen $40 per month requires a two-thirds vote, unless we can say or presume that the amount will not have to be raised by taxation.   By section 2, chap. 30, of the organic act (Act No. 215, Pub. Acts 1895), the council is authorized to "raise annually by taxation   *   *   *   such sum   *   *   * as may be necessary to defray the expenses and pay the liabilities of the city;" and it is provided by section 3 that the revenues raised shall be divided into several general funds, among which is a "fire-department fund, to defray the expenses of   *   *   *   purchasing engines and other fire apparatus, and all other expenses necessary to maintain the fire department of the city."   While this law requires a two-thirds vote for the raising of money, it requires only a majority vote for its appropriation to the payment of obligations, if the money has already been raised.   If it appeared that the city had provided no fund

114 MICH.—8.

that might be lawfully applied to this object, we might feel constrained to hold that this employment was by an insufficient vote, because creating a contract necessarily dependent on taxation; but this does not appear, and we may presume that the council has provided the necessary fund, or that it would not attempt an expenditure of this kind. It goes without saying that a budget must necessarily, to some extent at least, be based upon estimates of probable and contingent expenditures, rather than on contracts already made, and that it would not be possible to manage the affairs of any department without a fund which might be used to defray the costs of incidental expenditures. If a fund has been provided to pay firemen, we see no reason why it may not be used to pay such firemen as may have been subsequently employed. We are of the opinion that, upon this record, we cannot say that a two-thirds vote was required.

That a majority vote was necessary is plain. Was the mayor's vote one which might be counted?

If, as counsel for the appellee contend, this action was not the appropriation of money, it may be that the mayor had the casting vote, under section 2, above quoted. If, on the other hand, it was an appropriation of money, it will depend on the construction to be given section 7. It is said that this action was taken by motion, and not by resolution or ordinance, as the law requires where money is appropriated, and that there was no attempt to appropriate any money for payment of the firemen. We think that this engagement of firemen at $40 a month was equivalent to an appropriation of money, as it sought to create an obligation which could only be met by the appropriation of money, and is within the reasoning of the case of *Tennant* v. *Crocker, supra*, and *Fournier* v. *City of West Bay City*, 94 Mich. 463; and we think that the appellee is not in a position to say that this was not done through a resolution, or the equivalent thereof. If a formal resolution were necessary, it would be fatal to the appellee's claim, for it is none the less an appropriation

of money because the action was taken in the form of a . motion, instead of a resolution.

This leaves only the question of construction. The circuit court seems to have looked upon this as an appropriation of money, which required a vote of a majority of the aldermen elect, but considered the right of the mayor to break a tie, by his vote, as an exception to that requirement. If we disregard the exception, the exact and technical language of the section excludes the vote of the mayor. Instead of saying a majority of the council elect, which counsel say consists of seven voting members, as provided by sections 1 and 2, different language is used, and the power is confined to a majority of the aldermen, not of the council. A similar question was passed upon in the case of *Fournier* v. *City of West Bay City, supra,* where a resolution, held to be an appropriation of money, received 6 votes, as against 5; 11 of 12 aldermen being present. The resolution was declared carried by the mayor. This was under a charter which made the mayor *ex officio* a member of the council, with the right to vote only in case of a tie. Counsel disagree about the effect of this decision, but we need not pass upon the meaning of the language used in that case, as the provisions of this law differ from that passed upon, in that an exception is made to the requirement of an affirmative vote by a majority of the aldermen elect to carry a resolution. The provision requiring a vote of a majority of the aldermen elect excludes the efficacy of a vote by a majority of a quorum, while the exception obviates the possibility of a tie.

Our view of the case accords with that of the learned circuit judge, whose order is hereby affirmed.

The other Justices concurred.